Richard Rudd, appellant, v.
Hank Debora, appellee.
___ N.W.2d ___

Filed June 18, 2013.    No. A-12-196.

1. **Summary Judgment.** Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact, or as to the ultimate inferences that may be drawn from those facts, and that the moving party is entitled to judgment as a matter of law.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
4. **Limitations of Actions: Dismissal and Nonsuit: Jurisdiction.** The language of Neb. Rev. Stat. § 25-217 (Reissue 2008) has been deemed to be self-executing and mandatory, depriving the trial court of jurisdiction by operation of law.
5. **Limitations of Actions: Dismissal and Nonsuit.** Neb. Rev. Stat. § 25-217 (Reissue 2008) is self-executing, so that an action is dismissed by operation of law, without any action by either the defendant or the court, as to any defendant who is named in the action and not served with process within 6 months after the complaint is filed.
6. ____: ____. Neb. Rev. Stat. § 25-217 (Reissue 2008) has no provision for an extension of time in which to obtain service of summons or any exceptions to the 6-month time limit. Therefore, a defendant must be served within 6 months from the date the complaint was filed, regardless of whether the plaintiff falsely believed he had served the correct defendant.
7. **Pleadings: Appeal and Error.** An appellate court reviews a district court's decision on a motion for leave to amend a complaint for an abuse of discretion, but a district court's discretion to deny such leave is limited.
8. ____: ____. A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Affirmed.

Matthew A. Lathrop, of Law Office of Matthew A. Lathrop, P.C., L.L.O., for appellant.

Michael F. Scahill and Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

Irwin, Moore, and Pirtle, Judges.

Pirtle, Judge.

## INTRODUCTION

Richard Rudd brought a negligence action against "Hank Debora," whose actual name is "Henk Marten deBoer," in the district court for Douglas County. The father of the intended defendant, who shares the exact same name as his son, was served with summons rather than the son. The district court granted summary judgment in favor of the father and dismissed Rudd's complaint with prejudice. Rudd appeals. Based on the reasons that follow, we affirm.

## BACKGROUND

On June 17, 2010, Rudd filed a complaint against Henk Marten deBoer, sued as "Hank Debora," alleging that on December 6, 2006, Rudd was walking in the parking lot of what was then the "Qwest Center" in Omaha, when deBoer ran at Rudd from behind and jumped on him, causing him to fall forward and suffer personal injuries. The Henk Marten deBoer that allegedly caused Rudd's injuries shares the same exact name as his father. Neither one uses a designation such as "Sr." or "Jr." to distinguish his name. For purposes of this opinion, we will refer to one as the son and the other as the father.

In the fall of 2009, prior to the complaint's being filed, Rudd's attorney contacted C.G. Jolly, an attorney who was representing the son in a divorce action at the time, to find out the name of the son's homeowner's insurance carrier, because Rudd intended to file a claim based on the injuries caused by the son. Jolly indicated that he would contact the son and get the information Rudd needed, which he did. A claim was made with the insurance company, and it was denied.

On August 31, 2010, the father was served with a summons and complaint at Hand Picked Auto, his place of business, located in Council Bluffs, Iowa. The praecipe requested summons for personal service upon "Hank Debora" by a sheriff at the named defendant's place of business, Hand Picked Auto, which is a car dealership started by the son in 2002. In January 2010, the son turned the dealership over to his father.

Since that time, the son has had no involvement with Hand Picked Auto.

The father testified in his deposition, taken by Rudd's attorney, that when the sheriff came to serve the summons and complaint on August 31, 2010, regarding an incident at the Qwest Center, he told the sheriff that the complaint would be for his son and that his son could be found at Performance Chrysler Jeep Dodge, his place of employment, located in La Vista, Nebraska, in about 2 weeks, because his son was out of town at the time.

On September 15, 2010, the father again was served with another summons and complaint at Hand Picked Auto. The father testified that he again told the sheriff that if the papers had anything to do with an incident at the Qwest Center, the sheriff needed to go to Performance Chrysler Jeep Dodge in La Vista, which was where his son worked. The father testified that despite what he told the sheriff, the sheriff left the paperwork with him.

The father further testified that a few weeks later, he asked his son about whatever became of the Qwest Center incident and his son told him that the insurance company had denied Rudd's claim, so it was over. The father testified that he told his son a sheriff had dropped off some paperwork at Hand Picked Auto and that the son again stated, "[T]hat thing is all over."

The son testified in his deposition that at some point after the sheriff had left the papers on September 15, 2010, his father told him about the papers and that they involved Rudd. The son testified that he did not realize Rudd was attempting to sue him for the Qwest Center incident, because his insurance company had previously told him that Rudd's claim had been denied, so he believed any claim Rudd had against him was finished. The son assumed Rudd was attempting to sue the car dealership for some other matter and told his father that he should hire an attorney. The son subsequently asked Grant A. Forsberg, a law partner of Jolly's, to contact his father to discuss documents he had received from the sheriff. Forsberg called the father and learned that he had been served with a summons and complaint on two occasions, but that

he was not the person involved in the incident set forth in the complaint.

On October 18, 2010, the father filed a motion for leave to file an answer out of time. The court entered a stipulated order allowing additional time to plead. On November 22, the father filed an answer which consisted of a general denial.

On December 21, 2011, the father filed a motion for summary judgment. A hearing on the motion was held and evidence presented, including two affidavits and the deposition of the father, the deposition of the son, and an affidavit of Forsberg. At the hearing, Rudd made an oral motion to amend the pleadings to correct or substitute the name of the defendant, which motion was denied. On February 14, 2012, the court sustained the father's motion for summary judgment and dismissed Rudd's complaint with prejudice.

## ASSIGNMENTS OF ERROR

Rudd assigns, restated, that the trial court erred in (1) failing to allow him to proceed with his claim against the son and (2) dismissing his complaint with prejudice.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact, or as to the ultimate inferences that may be drawn from those facts, and that the moving party is entitled to judgment as a matter of law. *Smeal v. Olson*, 263 Neb. 900, 644 N.W.2d 550 (2002). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

[3] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

## ANALYSIS

We first note that Rudd does not argue that the court erred in granting summary judgment in favor of the father. At the

summary judgment hearing, Rudd's attorney admitted that based on the evidence presented, the father was entitled to summary judgment. The father was the only individual served with a summons and Rudd's complaint, and the father's affidavit and deposition made it clear that he had no involvement in the incident at the Qwest Center on December 6, 2006, as set forth in the complaint. Rather, it was his son who was involved in the incident at the Qwest Center and was the intended defendant. The evidence is undisputed that the father was not the individual involved in the incident described in Rudd's complaint, and he was, therefore, entitled to summary judgment.

Although Rudd does not challenge the granting of summary judgment in favor of the father, he makes several arguments as to why he should be allowed to serve the son with summons and proceed with his claim against him.

Rudd first argues that he should be allowed to serve the son with summons, because the father knew that the wrong individual had been served and he had a duty to provide Rudd with notice of such error but failed to do so. Rudd argues that the Nebraska Court Rules of Pleading in Civil Cases require action on the part of a defendant who believes the wrong individual was served with summons or questions any aspect of service. He suggests that the rules required the father, either by motion or in his answer, to affirmatively allege that he was not the individual described in the complaint.

Neb. Rev. Stat. § 25-516.01 (Reissue 2008) provides that a defense of lack of personal jurisdiction or insufficiency of service of process may be asserted only under the procedure provided in the pleading rules adopted by the Nebraska Supreme Court.

Neb. Ct. R. Pldg. § 6-1112(b) provides that every defense to a claim for relief in any pleading shall be asserted in a responsive pleading, but also allows for certain defenses to be raised by motion at the option of the pleader. The defenses that may be raised by motion or responsive pleading include, among others, lack of jurisdiction over the person and insufficiency of process. In the present case, the father did not file a motion raising a defense and did not raise a defense in his

answer, but, rather, filed a general denial. See Neb. Ct. R. Pldg. § 6-1108(b).

Rudd contends that service of summons on the wrong individual falls under a lack of personal jurisdiction defense or an insufficiency of service of process defense and that therefore, the father was required to raise such defenses in his answer or by motion. We disagree. The father was properly served with a valid summons, and the court thereby obtained personal jurisdiction over him. There is no question of personal jurisdiction over the father, and there are no objections to the service of summons on the father. Accordingly, there was no need for the father to raise these issues in his answer or in a motion, and further, the court rules do not require him to raise in his answer or by motion that the wrong individual was served.

Rudd also argues that the father's filing of a motion to extend the answer deadline and his filing of an answer requesting dismissal of Rudd's lawsuit was a "voluntary appearance" by the father. He contends that because of the voluntary appearance, the father waived any objections to personal jurisdiction or service of process. Rudd relies on § 25-516.01(1), which provides that the voluntary appearance of the party is equivalent to service.

Again, as previously discussed, the father was properly served and the district court obtained personal jurisdiction over him. The father did not allege any error or raise any objections in connection with service of process upon him or personal jurisdiction, so there were no errors to be waived.

Further, in regard to any claim against the son, a voluntary appearance by the father does not waive any error in service on behalf of the son. The son has never been served with a summons and has never made an appearance in this case. A voluntary appearance of the father has no effect on the lack of service of process upon the son.

Rudd next argues that he should be allowed to serve the son outside the statutory time limit for service of process, because the father purposefully led him to believe that the right individual had been served. In Nebraska, a defendant must be served with summons within 6 months after the complaint is filed. Specifically, Neb. Rev. Stat. § 25-217 (Reissue 2008)

provides: "An action is commenced on the date the complaint is filed with the court. The action shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed." In the instant case, the 6-month grace period for service of process expired on December 18, 2010.

In his brief, Rudd discusses several cases from other jurisdictions to support his argument that he should be granted additional time to serve a summons on the son because he was misled by the actions of the father. See, *Eddinger v. Wright*, 904 F. Supp. 932 (E.D. Ark. 1995); *In re Hollis and Co.*, 86 B.R. 152 (Bankr. E.D. Ark. 1988); *Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104 (E.D. Mich. 1987). However, the applicable service of process rule in each of the cases on which he relies allowed for a defendant to be served outside the set timeframe for service of process upon a showing of good cause. The cases relied on by Rudd are distinguishable from the present case because § 25-217 does not allow for any such exception.

[4] As previously stated, § 25-217 provides that "[t]he action shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed." The statutory language has been deemed to be self-executing and mandatory, depriving the trial court of jurisdiction by operation of law. See *Vopalka v. Abraham*, 260 Neb. 737, 619 N.W.2d 594 (2000).

In *Smeal v. Olson*, 10 Neb. App. 702, 636 N.W.2d 636 (2001), *reversed on other grounds, Smeal v. Olson*, 263 Neb. 900, 644 N.W.2d 550 (2002), the Nebraska Court of Appeals specifically found that one of the cases relied on by Rudd, *Eddinger v. Wright, supra*, was not supported by Nebraska law. The plaintiff in *Smeal v. Olson, supra*, made a similar argument to the one Rudd is making, that a plaintiff should be allowed to serve the correct party after the expiration of the grace period for perfecting service because the plaintiff was led to believe that the right defendant had been served.

In *Smeal v. Olson, supra*, Rickard K. Olson was served with a petition filed by the plaintiff, alleging that the defendant negligently caused a motor vehicle accident. Rickard K.

Olson initially filed an answer admitting that he was the driver of the vehicle, but later indicated that it was actually his son, Rickard W. Olson, who was driving the vehicle at issue. The son was ultimately served, albeit after the statute of limitations had run and after the 6-month time limit for service of summons allowed by § 25-217. The district court sustained the son's motion for summary judgment and dismissed the action against him.

In regard to the plaintiff's being misled into believing he served the right defendant, the Court of Appeals found:

> Although the father's answer certainly qualifies as "artful" avoidance, and perhaps part of a "scheme" of deception, . . . we note that § 25-217 does not allow Nebraska courts to extend the time for service of process . . . . [T]he Nebraska courts have held that § 25-217 is a self-executing statute which, once the 6 months has run, deprives the district court of jurisdiction to take any further action in the case. . . .
>
> In a phrase, we have construed § 25-217 as having a "drop dead" effect for a case in which service is not perfected within the grace period. Thus, while the court's opinion in *Eddinger v. Wright, supra*, may resonate with our sense of justice, we are bound to decide this case under Nebraska law. And, the "drop dead" feature of our grace period statute means that *Eddinger v. Wright* is distinguishable. The Arkansas statute specifically allows a court-ordered extension, but under the present state of Nebraska law, courts lack the ability to expand the grace period or dispense with the statute of limitations. If the grace period is to be expanded . . . then the Legislature must change the statute, we cannot.

*Smeal v. Olson*, 10 Neb. App. at 710-11, 636 N.W.2d at 643-44.

[5] This court and the Nebraska Supreme Court have repeatedly held that § 25-217 is self-executing, so that an action is dismissed by operation of law, without any action by either the defendant or the court, as to any defendant who is named in the action and not served with process within 6 months after the complaint is filed. See *Davis v. Choctaw Constr.*, 280 Neb. 714, 789 N.W.2d 698 (2010).

[6] Section 25-217 has no provision for an extension of time in which to obtain service of summons or any exceptions to the 6-month time limit. Therefore, in Nebraska, a defendant must be served within 6 months from the date the complaint was filed, regardless of whether the plaintiff falsely believed he had served the correct defendant. Rudd cannot be granted additional time to serve a summons on the son because he allegedly was misled by the actions of the father.

Rudd next argues that the trial court erred in denying him the opportunity to amend his complaint and in dismissing his complaint with prejudice. He contends that if he were allowed to amend his complaint, it would "relate back" to the timely filed original complaint, allowing him to maintain the action against the son. At the summary judgment hearing, Rudd made an oral motion to amend the pleadings to name the correct defendant and to include allegations that the son had constructive notice of the lawsuit. The court denied the motion to amend the pleadings.

[7,8] Neb. Ct. R. Pldg. § 6-1115(a) provides: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires." We review a district court's decision on a motion for leave to amend a complaint for an abuse of discretion, but a district court's discretion to deny such leave is limited. *Gonzales v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011). A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated. *Id.*

In the instant case, the district court did not abuse its discretion in denying Rudd's motion for leave to amend the pleadings; amending the pleadings would have been futile in this case, because the amended pleadings would not "relate back" to the original complaint, as Rudd contends.

Nebraska's relation-back statute, Neb. Rev. Stat. § 25-201.02 (Reissue 2008), provides in pertinent part as follows:

> (2) If the amendment [to a pleading] changes the party
> or the name of the party against whom a claim is asserted,

the amendment relates back to the date of the original pleading if (a) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, and (b) within the period provided for commencing an action the party against whom the claim is asserted by the amended pleading (i) received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Even if Rudd were allowed to amend the complaint, it would not change "the party or the name of the party against whom [the] claim is asserted," as necessary for § 25-201.02(2) to be applicable. The son was the intended defendant in the complaint and would remain so in an amended complaint. Although an amended complaint could correct the spelling of the defendant's name, such a change is meaningless here, inasmuch as the parties agree the original spelling of the defendant's name in the complaint is simply a misspelling or misnomer. Correcting the spelling changes nothing as far as the party against whom the claim is asserted and would not clear up any confusion, because the father and the son have the exact same name.

Although Rudd's attorney made a motion for leave to amend his complaint at the summary judgment hearing, he previously admitted at that same hearing that there was no reason to amend the complaint: "I can't amend my pleading here because [it's] correct. . . . [A]s I said, I can't amend the pleadings."

The failure in this case is not in naming the right defendant; the failure is in not serving the correct individual who was involved in the incident described in the complaint.

In addition, if Rudd were allowed to file an amended complaint, the relation-back statute would not apply to the amended complaint unless he could show that the son had notice of the action "within the period provided for commencing an action" or, stated differently, that he had notice prior to the statute of limitations' expiring.

The statute of limitations for a personal injury claim in Nebraska is 4 years from the date of the tortious act. See Neb. Rev. Stat. § 25-207 (Reissue 2008). The statute of limitations for Rudd's cause of action expired on December 7, 2010.

The evidence presented at the summary judgment hearing showed that the son did not have notice of the action prior to the statute of limitations' expiring. The son testified that sometime after his father was served with summons in September 2010, his father told him he had been served with some paperwork involving Rudd. The son testified that he believed Rudd was suing his father's business for something unrelated to the Qwest Center incident. He formed this belief because his insurance company had told him Rudd's claim against him in regard to the Qwest Center incident had been denied.

The son also testified that in the year 2010, he did not know Rudd had sued him for injuries arising out of the incident at the Qwest Center. Further, when asked when he first became aware that the present action was a lawsuit filed by Rudd against him, the son responded that he did not know until his new attorney called and told him. The record shows that his new attorney entered his appearance as the son's counsel on January 13, 2011, well after the statute of limitations had expired on December 7, 2010.

The father testified that after being served, he asked his son about the Qwest Center incident and told him that some paperwork had been dropped off by the sheriff involving Rudd. The father testified his son responded that the insurance company had denied Rudd's claim and that therefore, any claim against him was over.

In summary, we acknowledge this is a very unique set of facts, but allowing Rudd to amend his complaint would have been futile, because the relation-back statute would not apply, i.e., the amended complaint would not relate back to the date of the original complaint. Accordingly, any amended complaint would be barred by the applicable statute of limitations.

## CONCLUSION

We conclude that under this unusual set of facts, the district court properly granted summary judgment in favor of

the father. We further conclude that the statute of limitations and the grace period for service of process have both expired and that the relation-back statute is inapplicable in the instant case. Accordingly, the district court properly dismissed Rudd's claim with prejudice. The judgment of the district court is affirmed.

Affirmed.

———————————

Morgan R. Geiss, now known as
Morgan R. Bennett, appellee,
v. Eric M. Geiss, appellant.
___ N.W.2d ___

Filed June 18, 2013.    No. A-12-564.

1. **Child Custody: Visitation: Appeal and Error.** Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determinations will normally be affirmed absent an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.

3. **Appeal and Error.** Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error.

4. **Trial: Waiver: Appeal and Error.** Failure to make a timely objection waives the right to assert prejudicial error on appeal.

5. ____: ____: ____. An appellant's failure to object to the limitation imposed by the trial judge effectively waives the right to raise that ruling as an error on appeal.

6. **Appeal and Error.** An appellate court may consider an issue not raised to the trial court if such issue amounts to plain error.

7. ____. Plain error may be asserted for the first time on appeal or be noted by the appellate court on its own motion.

8. **Appeal and Error: Words and Phrases.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

9. **Effectiveness of Counsel.** A pro se litigant is held to the same standard as one who is represented by counsel, and the trial court has the inherent power to compel conformity with Nebraska procedural practice.