Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/11/2020 09:09 AM CST

- 172 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

Omaha Exposition and Racing, Inc., appellee,
v. Nebraska State Racing Commission et al.,
appellees, and Hall County Livestock
Improvement Association and
Nebraska Thoroughbred Breeders
Association, appellants.

___ N.W.2d ___

Filed September 18, 2020.    No. S-19-020.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or
   final order rendered by a district court in a judicial review pursuant to
   the Administrative Procedure Act may be reversed, vacated, or modified
   by an appellate court for errors appearing on the record.
2. **____: ____: ____.** When reviewing an order of a district court under
   the Administrative Procedure Act for errors appearing on the record, the
   inquiry is whether the decision conforms to the law, is supported by com-
   petent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Statutes: Appeal and Error.** Statutory interpretation presents a ques-
   tion of law, for which an appellate court has an obligation to reach
   an independent conclusion irrespective of the decision made by the
   court below.
4. **Jurisdiction: Appeal and Error.** A jurisdictional question which does
   not involve a factual dispute is determined by an appellate court as a
   matter of law.
5. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the
   power of a tribunal to hear and determine a case in the general class or
   category to which the proceedings in question belong and to deal with
   the general subject matter involved.
6. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised
   at any time by any party or by the court sua sponte.
7. **____: ____.** A court action taken without subject matter jurisdiction
   is void.

- 173 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

8. **Administrative Law: Jurisdiction: Appeal and Error.** Where a district court has statutory authority to review an action of an administrative agency, the district court may acquire jurisdiction only if the review is sought in the mode and manner and within the time provided by statute.

9. **Appeal and Error.** The right of appeal in Nebraska is purely statutory.

10. **Jurisdiction: Statutes: Appeal and Error.** The requirements of a statute underlying a right to appeal are mandatory and must be complied with before the appellate court acquires jurisdiction of the subject matter of the action.

11. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

12. **Administrative Law: Jurisdiction: Appeal and Error.** In analyzing the requirements to initiate judicial review under the Administrative Procedure Act, for a district court to acquire jurisdiction to review a final decision of an administrative agency, the appellant must file the petition and serve summons.

13. **Jurisdiction.** Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.

14. **Administrative Law: Parties: Appeal and Error.** Determining whether an agency acted beyond its role as a neutral fact finder to qualify as one of the "parties of record" under Neb. Rev. Stat. § 84-917 (Reissue 2014) requires looking at the nature of the administrative proceeding under review.

15. **Administrative Law: Words and Phrases.** An administrative agency is a neutral factfinding body when it is neither an adversary nor an advocate of a party.

16. **Administrative Law: Parties.** When an administrative agency acts as the primary civil enforcement agency, as distinguished from determining the rights of two or more individuals in a dispute before such agency, it is more than a neutral factfinding body.

17. ____: ____. An agency that is charged with the responsibility of protecting the public interest, and not merely determining the rights of two or more individuals in a dispute, is more than a neutral factfinding body.

18. **Administrative Law: Parties: Appeal and Error.** When evaluating whether an agency is a neutral fact finder under Neb. Rev. Stat. § 84-917(2)(a) (Reissue 2014), courts look to the agency's actions as to the dispute at issue, the statutory basis upon which the agency was

- 174 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

acting, and the participation of the agency in the matters surrounding the dispute.

19. **Administrative Law.** Where an agency acts beyond the role of a neutral fact finder due to its responsibility to the public interest, its role as the primary civil enforcement entity, or its licensing and credentialing function, the agency takes some action or is required to make some consideration beyond merely resolving a dispute between outside parties.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Vacated and dismissed.

Cathy S. Trent-Vilim, John M. Walker, and Daniel J. Waters, of Lamson, Dugan & Murray, L.L.P., for appellant Hall County Livestock Improvement Association.

O. William VonSeggern for appellant Nebraska Thoroughbred Breeders Association.

Christopher D. Jerram, Raymond E. Walden, and Michael T. Gibbons, of Woodke & Gibbons, P.C., L.L.O., for appellee Omaha Exposition and Racing, Inc.

Tara Tesmer Paulson, of Rembolt Ludtke, L.L.P., for appellee Nebraska Horsemen's Benevolent and Protective Association, Inc.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

This case concerns moneys accumulated from deductions of horseracing wagers under Neb. Rev. Stat. §§ 2-1207(2) (Cum. Supp. 2018) and 2-1207.01 (Reissue 2012) for the promotion, support, and preservation of agriculture and horse breeding in Nebraska. Pursuant to a request from the Nebraska Thoroughbred Breeders Association (NTBA), the Nebraska State Racing Commission (Commission) directed § 2-1207(2) funds collected by the Nebraska Horsemen's Benevolent & Protective Association, Inc. (HBPA), from Nebraska horseracing tracks be transferred to NTBA. The district court reversed

- 175 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

and vacated the order, finding the Commission exceeded its statutory authority in ordering that the funds be paid over to NTBA for distribution. Because the district court lacked subject matter jurisdiction to consider the petition, its order reversing and vacating the Commission's order is void and must be vacated, and we must dismiss this appeal.

## BACKGROUND

Appellant NTBA is a nonprofit corporation formed to promote breeding of thoroughbred horses in Nebraska. Appellant Hall County Livestock Improvement Association, doing business as Fonner Park, is a nonprofit corporation for the promotion of agriculture, fairs, and horseracing. Fonner Park is licensed and authorized to operate as a horseracing track and participate in the simulcasting of horseraces in Grand Island, Nebraska. Fonner Park and Agricultural Park, a Nebraska racetrack located in Columbus, Nebraska, account for 90 percent of all live horseracing in Nebraska.

Omaha Exposition and Racing, Inc. (OER), is a nonprofit corporation and is licensed and authorized for horseracing and simulcasting services. OER operates and does business as Horsemen's Park in Omaha, Nebraska, and Lincoln Race Course in Lincoln, Nebraska. Horsemen's Park and Lincoln Race Course hold live races each year, but most of their revenues are derived from simulcasting. The facilities at Horsemen's Park and Lincoln Race Course are owned by HBPA, which is a member of OER and holds two of the four OER governing board seats. HBPA is a nonprofit corporation representing a majority of all licensed owners and trainers that race thoroughbred horses at Nebraska licensed racetracks.

Nebraska horseracing tracks are statutorily required to deduct a percentage of all wagers made at their tracks to promote and preserve agriculture, horse breeding, and horseracing in Nebraska.[1] These deducted amounts are to be distributed

---

[1] §§ 2-1207(2) and 2-1207.01.

- 176 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

as purse supplements and breeder and stallion awards for Nebraska-bred horses.[2] Distribution is to be made at the racetrack where the funds are generated unless the racetrack does not conduct live race meets, in which case the deducted funds may be distributed to those racetracks which do conduct live race meets for the promotion of horseracing or as purse supplements.[3]

Prior to the 1990's, each horseracing track in Nebraska had individual bookkeepers, including HBPA who used its bookkeeper to distribute purse awards at the tracks. In 1996, Ak-Sar-Ben, an Omaha racetrack, closed and the remaining tracks determined it would be economically beneficial to transfer their bookkeeping duties to a single bookkeeper, the one used by HBPA. NTBA alleges this system was approved by the Commission and worked without issue until the current dispute arose in 2017.

In 1998, because the majority of live horseracing occurred at only a few of the parks, the presidents of HBPA and NTBA entered into an agreement for the redistribution of a portion of the funds collected from the statutorily required deductions from wagers on simulcast races. That year, the amount deducted from simulcast races totaled approximately $175,000. The parties agreed to distribute $80,000 to Fonner Park, $25,000 to Agricultural Park, and $70,000 to a now-relocated Lincoln racetrack. Appellants allege that until 2017, the parties continued to allocate a portion of funds deducted from simulcast races to individual racetracks by determining what an equitable amount of breeder purses were to be and HBPA's bookkeeper paying out those amounts.

By a letter in June 2017, HBPA advised NTBA that the bookkeeper, at HBPA's direction, was suspending distribution of the deducted funds because Fonner Park failed to contribute its share. According to Fonner Park, this alleged deficit was

[2] § 2-1207.01.

[3] Id.

- 177 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

created by the addition to Fonner Park's earnings of simulcast funds allocated by NTBA. Fonner Park asserts such deficits have historically been satisfied by HBPA's bookkeeper using surplus deducted simulcast funds from other Nebraska racetracks. In the June 2017 letter, HBPA claimed this use of deducted simulcast funds from other Nebraska racetracks to satisfy Fonner Park's contribution requirements appeared to be contrary to a statutory directive that all contributions of the deducted funds must come from the individual track and cannot come from another.

On July 7, 2017, NTBA submitted an emailed request to be on the agenda for the upcoming Commission meeting. In the email, NTBA asked the Commission to order "the HBPA['s] Purse Bookkeeper to pay all NTBA accumulated funds in the Purse Bookkeeper[']s possession to the [NTBA]." In a subsequent email, NTBA modeled the statutory language for the deducted funds and described "NTBA accumulated funds" as "funds generated for our breeders' awards, purse supplements, and purses." NTBA also asked the Commission to order that all future deducted funds by Nebraska racetracks be paid over to NTBA and its bookkeeper for allocation and disbursement.

The Commission held hearings on NTBA's request at its meetings on July 20, October 25, and December 19, 2017. On February 21, 2018, the Commission issued an order granting NTBA's request. The order stated that the Commission's statutory authority to enforce all state laws covering horseracing extended to enforcement of the deduction statutes and determination of a proper custodian of the funds generated. The Commission found that the current structure wherein the HBPA bookkeeper collected and distributed the funds allowed for the potential of future conflicts such as underpayment or misappropriation. Finding NTBA is the proper entity to serve as custodian of the funds, the Commission directed that all current deducted funds held by HBPA and its bookkeeper be transferred to NTBA and that all future funds deducted by any Nebraska racetracks be paid to NTBA.

- 178 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

OER submitted a petition for judicial review of the Commission's order to the district court on February 28, 2018. On March 1, OER filed a copy of a summons for the Commission that was addressed to the Attorney General through certified mail, although no return receipt was filed. OER also sent a summons with a copy of the petition by certified mail directly to the Commission, of which a return receipt was signed March 19, and the Commission filed a transcript of its proceedings in this matter on March 28. The Attorney General filed an answer to OER's petition on March 27. OER sent another notice for the Commission through certified mail to the Attorney General's office on March 28, which return receipt was signed April 3.

Additionally on March 1, 2018, OER filed a copy of a summons for NTBA addressed to "Linda F. Hoffman & Zack Mader." However, no return receipt was filed. On March 22, NTBA filed an answer.

After a hearing on the matter, the district court reversed and vacated the Commission's order. The court found the Commission lacked statutory authority to appoint a custodian of the funds and require payment of the funds by Nebraska racetracks to that appointed entity. The court explained that the statutes governing the deduction of the funds are unambiguous and that the Legislature did not empower any entity other than the licensed racetracks with responsibility to collect the funds or delegate custody of the funds to anyone other than the licensed racetracks. The court additionally determined that the past practice of subsidizing other racetracks by allowing NTBA to allocate a portion of the generated funds based on its determination of what was equitable was contrary to the statutory directive that the funds be distributed at the racetrack where they were generated. Accordingly, the court concluded that the Commission erred in appointing NTBA as custodian and granting NTBA the authority to collect and determine distribution of the deducted funds.

- 179 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

## ASSIGNMENTS OF ERROR

Appellants assign, consolidated and restated, that the district court erred by (1) considering the petition for further review while lacking subject matter jurisdiction due to OER's failure to sufficiently serve NTBA and the Commission, (2) determining the Commission did not have authority to appoint a custodian of the deducted funds, (3) reaching the issue of where the deducted funds may be used when the issue was not brought before the Commission, and (4) determining all deducted funds must be used at the racetrack where the funds are generated.

## STANDARD OF REVIEW

[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act (APA) may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[4] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[5]

[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[6]

[4] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[7]

## ANALYSIS

Before we can consider whether the Commission was authorized to appoint NTBA as the custodian of the funds and

---

[4] *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017).

[5] *Id*.

[6] *Id*.

[7] *Id*.

- 180 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

the merits of the appeal, we must first determine whether the district court had subject matter jurisdiction to consider OER's petition for further review and whether we, in turn, have jurisdiction to consider an appeal of the district court's order.

Neb. Rev. Stat. § 84-917 (Reissue 2014) provides the procedure for judicial review of an agency's final decision in a contested case. Under this statute, an aggrieved party may seek review of a final decision by filing a petition in district court within 30 days after service of the decision.[8] All parties of record to the agency action must be made parties to the proceedings for judicial review.[9]

Appellants claim that the district court lacked subject matter jurisdiction due to insufficiencies in OER's service of NTBA and the Commission under § 84-917(2)(a)(i). Appellees, in turn, claim service of a petition for judicial review under the APA is not an issue of subject matter jurisdiction, that NTBA entered a voluntary appearance which is the equivalent of process, and that OER properly served the Commission.

## SUBJECT MATTER JURISDICTION

Contrary to appellees' arguments, under the APA, service of necessary parties in a petition for further review is an issue of subject matter jurisdiction.[10]

[5-7] Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.[11] Lack of subject matter jurisdiction may be raised at any time by any party or by the

---

[8] § 84-917(2)(a)(i).

[9] *Id.*

[10] See, *Candyland, LLC v. Nebraska Liquor Control Comm.*, 306 Neb. 169, 944 N.W.2d 740 (2020); *J.S., supra* note 4; *Concordia Teachers College v. Neb. Dept. of Labor*, 252 Neb. 504, 563 N.W.2d 345 (1997).

[11] *J.S., supra* note 4.

- 181 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

court sua sponte.[12] A court action taken without subject matter jurisdiction is void.[13]

[8] Where a district court has statutory authority to review an action of an administrative agency, the district court may acquire jurisdiction only if the review is sought in the mode and manner and within the time provided by statute.[14]

[9-11] The right of appeal in Nebraska is purely statutory.[15] The requirements of a statute underlying a right to appeal are mandatory and must be complied with before the appellate court acquires jurisdiction of the subject matter of the action.[16] In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[17]

[12] In analyzing the requirements to initiate judicial review under the APA, we have held that for a district court to acquire jurisdiction to review a final decision of an administrative agency, the appellant must file the petition and serve summons.[18] Section 84-917(2)(a)(i) states that judicial review "*shall be instituted* by filing a petition in the district court . . . within thirty days after the service of the final decision by the agency"; "[a]ll parties of record *shall be made parties* to the proceedings for review"; and, if the agency is a party of record, "[s]ummons *shall be served* within thirty days of the filing of the petition in the manner provided for service of a summons in section 25-510.02." (Emphasis supplied.) When Neb.

---

[12] *Id*.

[13] *Id*.

[14] *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017). See *J.S., supra* note 4.

[15] *J.S., supra* note 4.

[16] *Id*.

[17] *Id*.

[18] See *Candyland, LLC, supra* note 10. See, also, *J.S., supra* note 4; *Concordia Teachers College, supra* note 10.

- 182 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

Rev. Stat. § 25-510.02 (Reissue 2016) applies, a summons must be served on the Attorney General in order to institute judicial review.[19] Additionally, while § 84-917(2)(a)(i) states service shall be provided "in the manner provided for service of a summons in section 25-210.02" and the required means of service under § 25-510.02 only addresses the means of service of the agency, we have held that "service on nongovernmental entities under § 84-917(2)(a)(i) is required 'within thirty days of the filing of the petition'" and have applied such requirement as an issue of subject matter jurisdiction when there is insufficient service of nongovernmental entities.[20]

Because § 84-917(2)(a)(i) requires service within 30 days of necessary parties to an agency action—including nongovernmental parties of record and, if the agency is a party of record, the agency through the Attorney General—in order to initiate a judicial review, such service is an issue of subject matter jurisdiction.

### Sufficiency of OER's
### Service of NTBA

Appellees do not contest that OER failed to serve NTBA within 30 days of the filing of the petition. Instead, appellees claim NTBA voluntarily appeared by filing its answer and submitted itself to the district court's authority.

Appellees' argument is premised on the proposition that service of nongovernmental parties of record is an issue of only personal and not subject matter jurisdiction. As discussed, this proposition is incorrect and the service of nongovernmental parties of record under § 84-917(2) is necessary to provide the reviewing court with subject matter jurisdiction.[21]

[13] Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may

---

[19] See *Concordia Teachers College, supra* note 10.

[20] *Candyland, LLC, supra* note 10.

[21] See *id.*

- 183 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.[22] Accordingly, NTBA was unable to voluntarily submit itself to the district court's authority and NTBA's filing its answer did not overcome OER's failure to serve NTBA as required by § 84-917(2).

Because NTBA was a party of record to the agency action and it is undisputed that OER did not serve NTBA within 30 days of filing the petition, the district court lacked subject matter jurisdiction to consider the petition.

### Sufficiency of OER's
### Service of Commission

Similarly, OER's service of the Commission was insufficient and also deprived the district court of subject matter jurisdiction.

The required means and manner of service of an agency under the APA depends on whether the agency was a party of record to the proceedings. When determining whether the agency is a party of record, § 84-917(2)(a)(i) clarifies that the agency is not a party of record "[i]f an agency's only role in a contested case is to act as a neutral factfinding body . . . ." If the agency is not a party of record, the petitioner is required to serve only a copy of the petition and a request for preparation of the official record upon the agency within 30 days of filing the petition.[23] However, when the agency functions beyond a neutral factfinding body, the agency is a party of record and summons shall be served within 30 days of the filing of the petition as provided by § 25-510.02.[24] Section 25-510.02 requires that service upon a state agency be executed by leaving the summons at the office of the Attorney General or by certified mail or designated delivery service addressed to the office of the Attorney General. The purpose of § 25-510.02 is

---

[22] *J.S., supra* note 4.

[23] § 84-917(2)(a)(i).

[24] *Id.*

- 184 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

to give the State, its agencies, and its employees "'adequate notice of the case against it'" and to "'eliminate ineffectual service.'"[25]

Appellants argue that OER's service on the Commission was insufficient because the Commission acted beyond a neutral factfinding body, making it a necessary party of record and requiring service of the Attorney General within 30 days of the filing of the petition. Because OER failed to serve the Attorney General in accordance with § 25-510.02 until after the running of the 30 days, appellants claim service was insufficient and the district court lacked subject matter jurisdiction over the review.

[14-17] Determining whether an agency acted beyond its role as a neutral fact finder to qualify as one of the "parties of record" under § 84-917 requires looking at the nature of the administrative proceeding under review.[26] An administrative agency is a neutral factfinding body when it is neither an adversary nor an advocate of a party.[27] In contrast, when an administrative agency acts as the primary civil enforcement agency, as distinguished from determining the rights of two or more individuals in a dispute before such agency, it is more than a neutral factfinding body.[28] Also, an agency that is charged with the responsibility of protecting the public interest, and not merely determining the rights of two or more individuals in a dispute, is more than a neutral factfinding body.[29]

[18,19] When evaluating whether an agency is a neutral fact finder under § 84-917(2)(a), we have repeatedly looked to the agency's actions as to the dispute at issue, the statutory basis upon which the agency was acting, and the participation of the agency in the matters surrounding the dispute. In cases

---

[25] *Anthony K. v. State*, 289 Neb. 523, 532, 855 N.W.2d 802, 810 (2014).

[26] See *Kozal, supra* note 14.

[27] *McDougle v. State ex rel. Bruning*, 289 Neb. 19, 853 N.W.2d 159 (2014).

[28] See *id*.

[29] See *id*.

- 185 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

where an agency acts beyond the role of a neutral fact finder due to its responsibility to the public interest, its role as the primary civil enforcement entity, or its licensing and credentialing function, the agency takes some action or is required to make some consideration beyond merely resolving a dispute between outside parties.[30]

For instance, in *McDougle v. State ex rel. Bruning*,[31] the Division of Public Health of the Department of Health and Human Services revoked a practitioner's licenses to practice as a mental health practitioner and as a provisional alcohol and drug counselor after previously adopting regulations on statutorily impermissible unprofessional conduct of a licensee, conducting an investigation as to the practitioner's possible violations of the regulation, recommending the Attorney General file a petition for disciplinary action, and holding a hearing before the department's chief medical officer and director. *In re 2007 Appropriations of Niobrara River Waters*[32] involved a challenge to the Department of Natural Resources' issuance of closing notices for the purpose of administering water, and the department sought to advocate for the validity of its administration. In *In re Application of Metropolitan Util. Dist.*,[33] a utilities district applied to the Nebraska Public Service Commission (PSC) for certification as a competitive natural gas provider, the PSC had authority to approve or

---

[30] See, *Shaffer v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 740, 857 N.W.2d 313 (2014); *McDougle, supra* note 27; *In re 2007 Appropriations of Niobrara River Waters*, 283 Neb. 629, 820 N.W.2d 44 (2012); *Metropolitan Util. Dist. v. Aquila, Inc.*, 271 Neb. 454, 712 N.W.2d 280 (2006); *In re Application of Metropolitan Util. Dist.*, 270 Neb. 494, 704 N.W.2d 237 (2005); *Becker v. Nebraska Acct. & Disclosure Comm.*, 249 Neb. 28, 541 N.W.2d 36 (1995); *Leach v. Dept. of Motor Vehicles*, 213 Neb. 103, 327 N.W.2d 615 (1982) (superseded by statute as stated in *Candyland, LLC, supra* note 10).

[31] *McDougle, supra* note 27.

[32] *In re 2007 Appropriations of Niobrara River Waters, supra* note 30.

[33] *In re Application of Metropolitan Util. Dist., supra* note 30.

- 186 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

deny and set conditions on a certification, the PSC had the authority to enforce any order on the certification, and the PSC denied the utilities district's application. In *Becker v. Nebraska Acct. & Disclosure Comm.*,[34] following a taxpayer's complaint against the Board of Regents of the University of Nebraska, the Nebraska Accountability and Disclosure Commission investigated, found probable cause of violations, and entered into a settlement wherein the disclosure commission agreed to certain prosecutorial concessions in exchange for the board's making certain disclosures and refraining from the alleged violations in the future. Finally, in *Leach v. Dept. of Motor Vehicles*,[35] the Department of Motor Vehicles had revoked a driver's license pursuant to the implied consent law in execution of the department's given responsibility of protecting the public interest, as opposed to determining the rights of two or more people in a dispute, and the driver attempted to challenge the revocation by the department.

In the current action, the Commission was not merely determining the rights of two or more individuals in a dispute. It was also acting pursuant to its claimed licensing and credentialing authority to approve a custodian of the funds based upon the public interest.

NTBA requested that funds deducted under §§ 2-1207(2) and 2-1207.01 be transferred to NTBA and that NTBA be appointed custodian of the funds to be collected and distributed by an independent bookkeeper hired by NTBA. NTBA did this because it alleged the current structure utilizing HBPA's bookkeeper resulted in delayed distribution of the funds due to an external dispute among multiple horseracing organizations.

The Commission's statutory purpose is to provide statewide regulation of horseracing in order to prevent and eliminate corrupt practices and fraudulent behavior, and thereby maintain a high level of integrity and honesty in the horseracing

---

[34] *Becker, supra* note 30.

[35] *Leach, supra* note 30.

- 187 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

industry of Nebraska and to ensure that all funds received by the Commission are properly distributed.[36] As to the oversight of racetracks' compliance with §§ 2-1207(2) and 2-1207.01, the Commission has the statutory authority to review accounting of the racetracks,[37] license racetracks and racing industry participants,[38] revoke any license issued at any time for good cause,[39] and enforce horseracing statutes and regulations.[40] The Commission also has the authority to adopt rules and regulations governing horseracing and the licensing of horseracing associations.[41]

Under this authority, the Commission adopted an administrative regulation, which states:

> Each Association shall have a bookkeeper, approved by the Commission, whose duty it is to keep and preserve books which will reflect the deposits or other credits and withdrawals or other charges that may be made by an owner or other licensee. Said bookkeeper shall have an office at the track and said office shall be open on each racing day during the hours specified by the Commission. Said bookkeeper must also furnish such reports and information as may be required by the Commission or its representatives.[42]

In reviewing NTBA's request, the Commission considered whether to approve NTBA and its appointed bookkeeper for the management of the deducted funds or to maintain its alleged approval of HBPA's bookkeeper for such management. The Commission based its ruling on consideration of either

---

[36] Neb. Rev. Stat. § 2-1201.01 (Reissue 2012).

[37] § 2-1207.01; Neb. Rev. Stat. §§ 2-1205 and 2-1211 (Reissue 2012).

[38] Neb. Rev. Stat. § 2-1203.01 (Cum. Supp. 2018).

[39] § 2-1205.

[40] Neb. Rev. Stat. § 2-1203 (Cum. Supp. 2018); § 2-1203.01.

[41] § 2-1203.

[42] 294 Neb. Admin. Code ch. 3, § 001.08 (2006).

- 188 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

option's potential for corrupt practices and fraudulent behavior such as underpayment or misappropriation. The designation of the bookkeeper was not merely resolving an independent dispute between the parties, but was the Commission's exercising compliance assurance authority grounded in its role as the racetrack licensor and certifying agency. In approving the bookkeeper, the Commission indicated that it was attempting to prevent the exposure of possible future corruption and fraud.

In arguing the Commission was acting as a neutral fact finder, appellees note the Commission held evidentiary hearings where interested parties made appearances, exhibits were received, and the parties briefed their arguments. However, such procedures and similarities to the judicial process do not necessitate that the Commission was acting as a neutral fact finder.

In *Shaffer v. Nebraska Dept. of Health & Human Servs.*,[43] a Medicaid recipient was denied the continuation of coverage for private duty nursing services by a managed care organization because the managed care organization deemed the services were not medically necessary. The recipient appealed to the Department of Health and Human Services (DHHS), which held a hearing where the parties appeared before a DHHS hearing officer, presented testimony and evidence, and submitted arguments.[44] Based upon the record made at the hearing, DHHS' director of the Division of Medicaid & Long-Term Care concluded that the services were not medically necessary and agreed with the managed care organization's denial of coverage.[45] While DHHS' order involved a dispute between two or more parties and was the result of an evidentiary hearing, we determined DHHS' involvement

---

[43] *Shaffer, supra* note 30.

[44] *Id*.

[45] *Id*.

- 189 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

went beyond that of a neutral fact finder because DHHS was charged with the administration of the Medicaid program and had broad regulatory and oversight powers, adopted and promulgated the rules and regulations to determine eligibility, and was authorized to and did contract with the managed care organization for the provision of medical assistance for eligible recipients.[46]

The Commission's actions in the instant case are similar to DHHS' actions in *Shaffer*. The Commission was acting under broad regulatory, enforcement, and licensing authority. The Commission adopted and promulgated rules that require racetracks to have bookkeepers and which require the Commission's approval of those bookkeepers. In approving NTBA as the custodian of the funds and the use of its bookkeeper while revoking the approval of HBPA's bookkeeper, the Commission considered the potential effect its decision would have on the horseracing industry and its exposure to potential mistake, corrupt practices, and fraud.

This case is distinguishable from *Metropolitan Util. Dist. v. Aquila, Inc.*[47] There, a dispute between a utilities district and Aquila, Inc., two distributers of natural gas which both had contracts with the same natural gas supplier, arose over the utilities district's proposed construction of a gas main extension.[48] Aquila argued in a complaint before the PSC that the utilities district's extension violated Neb. Rev. Stat. §§ 57-1301 to 57-1307 (Reissue 2004), because it was not in the public interest.[49] Following a hearing, the PSC agreed and granted Aquila's request to order a cease and desist of the construction.[50]

---

[46] *Id.*

[47] *Aquila, Inc., supra* note 30.

[48] *Id.*

[49] *Id.*

[50] *Id.*

- 190 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

In determining the PSC was not a party of record under § 84-917, we concentrated our review on the PSC's actions in considering the dispute then at issue.[51] The statute authorizing the PSC to consider such a complaint, § 57-1306, expressly stated that the PSC "'shall have no jurisdiction over a metropolitan utilities district or natural gas utility beyond the determination of disputes'" brought under the relevant statutes.[52] These statutes specified that no utility could extend or enlarge its natural gas mains or services unless it was in the public interest and that, if a complaint was brought alleging an action was not in the public interest, the PSC was instructed to consider the question of public interest by weighing statutorily prescribed factors.[53]

There are no such limiting statutes that restrained the Commission's consideration in approving a bookkeeper and custodian of the deducted funds. The Commission was generally charged with overseeing the horseracing industry to ensure all funds received by the Commission are properly distributed, licensing and credentialing horseracing entities, enforcing horseracing statutes and regulations, and establishing rules and regulations governing horseracing and the licensing of horseracing associations.[54] Additionally, in the requirement of the Commission's approval of racetracks' bookkeepers, the Commission was not limited in its evaluation to specific statutorily prescribed factors.

For the reasons stated above, we find that the Commission was acting beyond its neutral factfinding role when it considered NTBA's request to approve NTBA and its bookkeeper as the custodian of the deducted funds and revoke the previous approval of HBPA. Therefore, the Commission was a party of record and appellees were required to serve summons on the

---

[51] *Id.*

[52] *Id.* at 458, 712 N.W.2d at 285.

[53] *Id.*

[54] §§ 2-1203, 2-1203.01, 2-1205, 2-1207.01, and 2-1211.

- 191 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

Commission through the Attorney General's office within 30 days of filing the petition for further review.[55]

Appellees contend that OER complied with § 84-917(2) because OER filed its petition for judicial review on February 28, 2018, and a summons was issued for the Commission on March 1, which alleged it would be sent to the Attorney General's office through certified mail, and that it can be implied such summons was sent by certified mail because the Attorney General filed an answer on March 27. Appellees claim this proof of service was sufficient because §§ 84-917(2) and 25-510.02 do not require a return receipt.

In analyzing the service of an agency under § 25-510.02, as when analyzing the option to serve an individual through certified mail under Neb. Rev. Stat. § 25-508.01 (Reissue 2016), we look to Neb. Rev. Stat. § 25-505.01(1)(c) (Reissue 2016) for the requirements of service by certified mail.[56] Section 25-505.01(1) requires the servicing party request a return receipt and states:

[A] plaintiff may elect to have service made by . . . :

. . . .

(c) Certified mail service which shall be made by (i) within ten days of issuance, sending the summons to the defendant by certified mail with a return receipt requested showing to whom and where delivered and the date of delivery, and (ii) filing with the court proof of service with the signed receipt attached[.]

In order for the district court to obtain subject matter jurisdiction, OER was required to serve the Commission within 30 days of filing the petition as provided by § 25-510.02; one option for service under § 25-510.02 is through certified mail, and § 25-505.01(1)(c) explains the process of service by certified mail to include requesting and filing a return

---

[55] § 84-917(2)(a)(i); § 25-510.02.

[56] See *Anthony K., supra* note 25. See, also, *Mendoza v. Osterberg*, No. 8:13CV65, 2014 WL 3784122 (D. Neb. July 31, 2014).

- 192 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

receipt as proof of service. As such, OER was required to request a return receipt on any service of the Commission it sent through certified mail. Without the return receipt, it is unknown whether OER sent the summons or whether service upon the Attorney General occurred. There is no affidavit of service or other evidence to establish service, and the fact that the Attorney General filed an answer is insufficient to establish service was executed. Accordingly, the issued summons listing the Attorney General's address is insufficient to prove proper service under § 84-917(2).

Though perhaps not the only method available to challenge the Commission's order, a petition for judicial review was the method chosen by OER. As a result, OER was obligated to bring the action in compliance with § 84-917(2). Because the Commission acted beyond the role of a neutral fact finder and was a party of record and because OER failed to execute service on the Attorney General in compliance with § 84-917(2)(a)(i), the district court lacked subject matter jurisdiction to review the Commission's order and its order reversing and vacating the Commission's order is void.[57]

Because the district court lacked subject matter jurisdiction to consider OER's petition for judicial review, we, in turn, lack jurisdiction to consider the district court's review.[58] Even when appellate jurisdiction is lacking, however, we have the power to vacate a void order and, if necessary, to remand the cause with appropriate directions.[59] As a result, we must vacate the order of the district court.

In vacating the order of the district court, we make no determination as to the merits of the Commission's order, whether the Commission had authority to consider NTBA's request, whether the Commission had authority to appoint

[57] See *J.S., supra* note 4.

[58] See *In re Estate of Evertson*, 295 Neb. 301, 889 N.W.2d 73 (2016).

[59] See *Francisco v. Gonzalez*, 301 Neb. 1045, 921 N.W.2d 350 (2019).

- 193 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

a custodian, or the extent of the Commission's authority to approve a bookkeeper.

## CONCLUSION

OER failed to seek district court review of the Commission's order in the mode and manner provided by § 84-197(2) by failing to timely serve the summons and a copy of the petition upon NTBA and the Commission through the Attorney General's office. The district court, therefore, lacked subject matter jurisdiction under the APA to consider the petition for judicial review and its order is void. We likewise lack subject matter jurisdiction over this appeal. We vacate the order of the district court and dismiss this appeal.

VACATED AND DISMISSED.

PAPIK, J., concurring.

Nebraska's Administrative Procedure Act (APA) allows those aggrieved by decisions of state agencies to seek review of those decisions in district court. See Neb. Rev. Stat. § 84-917(1) (Reissue 2014). In *Concordia Teachers College v. Neb. Dept. of Labor*, 252 Neb. 504, 563 N.W.2d 345 (1997), this court interpreted the APA to require that all parties of record before the agency be timely served with a summons in order for the district court to have *subject matter jurisdiction* of such a judicial review proceeding. We have followed that principle in subsequent APA cases, see, e.g., *Candyland, LLC v. Nebraska Liquor Control Comm.*, 306 Neb. 169, 944 N.W.2d 740 (2020), and in a case brought pursuant to similar statutes, see *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017), and the court applies it today to find that the district court lacked subject matter jurisdiction in this case. While I believe the court's decision faithfully applies the cases cited above, I write separately to observe that the interpretation of the APA we adopted in *Concordia Teachers College* resulted in a rule that is legally anomalous and, in my view, can lead to peculiar results.

The interpretation we first adopted in *Concordia Teachers College* is a legal anomaly because in most cases, properly serving a party with a summons is necessary to confer *personal* rather than subject matter jurisdiction. See, e.g., *Henderson v. Department of Corr. Servs.*, 256 Neb. 314, 589 N.W.2d 520 (1999) (holding that district court lacked personal jurisdiction over named parties because they were not served with summons and did not enter voluntary appearance); *Rudd v. Debora*, 20 Neb. App. 850, 855, 835 N.W.2d 765, 770 (2013) ("[t]he father was properly served with a valid summons, and the court thereby obtained personal jurisdiction over him"). See, also, *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987) ("[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied"); *York Group, Inc. v. Wuxi Taihu Tractor Co., Ltd.*, 632 F.3d 399, 403 (7th Cir. 2011) ("[t]he effectiveness of service concerns *personal* jurisdiction, not subject matter jurisdiction" (emphasis in original)). Treating service of a summons as an issue of personal rather than subject matter jurisdiction is consistent with how those concepts have been traditionally understood by this court. As we have often stated, personal jurisdiction is the power of a tribunal to subject and bind a particular person or entity to its decisions while subject matter jurisdiction refers to the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. See, e.g., *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013).

But the interpretation of the APA we embraced in *Concordia Teachers College* affects more than just those concerned with consistent use of legal terminology. As this case illustrates, application of the *Concordia Teachers College* rule can preclude judicial review in cases in which judicial review would be available if service of summons were, as in other contexts, a matter of personal jurisdiction. Here, NTBA and the

- 195 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

Commission filed answers in the judicial review proceeding less than 30 days after OER filed its petition. Their answers did not assert that the district court lacked jurisdiction, but asked that the district court affirm the decision of the Commission on its merits. If proper service of summons were a matter of personal jurisdiction, there would be no jurisdictional problem under these circumstances. The answers of NTBA and the Commission amounted to a general appearance and authorized the exercise of personal jurisdiction over them. See *Hunt v. Trackwell*, 262 Neb. 688, 635 N.W.2d 106 (2001). But because subject matter jurisdiction cannot be waived or conferred by the consent or conduct of the parties, see *id.*, under the rule of *Concordia Teachers College*, the district court lacked subject matter jurisdiction over OER's petition for judicial review.

While dictated by *Concordia Teachers College* and its progeny, this strikes me as a strange outcome. One would expect the purpose of a requirement that parties be served with a summons to be to ensure that parties involved have notice of the proceedings and an opportunity to participate before the court takes action that potentially affects the outcome of the agency proceedings in which they had an interest. But when parties make a general appearance within the time before which summons must be served, as the NTBA and the Commission did here, there is no need to worry about whether those parties received adequate notice. And I cannot conceive of any other reason why a district court should be precluded from exercising judicial review when a party who was not served with a summons nonetheless willingly engages on the merits in a judicial review proceeding. As far as I can tell, our interpretation of the APA in *Concordia Teachers College* has established, at best, a counterintuitive exception to the general rule that effective service is a requirement of personal rather than subject matter jurisdiction, and, at worst, a jurisdictional trap. See, e.g., *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017) (citing *Concordia Teachers College v.*

- 196 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

*Neb. Dept. of Labor*, 252 Neb. 504, 563 N.W.2d 345 (1997), and holding that district court lacked subject matter jurisdiction because there was no evidence school board that filed voluntary appearance in which it purported to waive service of summons was served with summons).

Given the important role of judicial review of administrative agency actions, this strikes me as a particularly unfortunate area for counterintuitive rules or jurisdictional traps. While usually belonging to the executive branch, administrative agencies that promulgate rules and regulations and adjudicate violations of those rules and regulations also exercise functions that appear to be more legislative or judicial in character. See *Arlington v. FCC*, 569 U.S. 290, 304 n.4, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013) (explaining that administrative agency actions can take "'legislative' and 'judicial' forms"). So how is the exercise of all these powers by the same entity not, as James Madison famously wrote, "the very definition of tyranny"? See The Federalist No. 47 at 298 (James Madison) (Clinton Rossiter ed., 2003) ("accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny"). While different jurists would surely offer different answers to that question, one that is commonly offered is that courts, through judicial review provisions, can hold agencies in check. See, e.g., Brietta R. Clark, *APA Deference After* Independent Living Center: *Why Informal Adjudicatory Action Needs a Hard Look*, 102 Ky. L.J. 211, 229 (2014) ("judicial review helps guard against abuse of power and arbitrariness"); Robert J. Pushaw, Jr., *Justiciability and Separation of Powers: A Neo-Federalist Approach*, 81 Cornell L. Rev. 393, 471 (1996) ("[i]n fact, the huge growth of executive agencies has not resulted in tyranny primarily because of congressional oversight and judicial review"). At the risk of stating the obvious, courts cannot perform this important function if they do not acquire subject matter jurisdiction.

- 197 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
OMAHA EXPO. & RACING v. NEBRASKA STATE RACING COMM.
Cite as 307 Neb. 172

None of these observations should be taken as criticism of the court's decision in this case. OER did not ask that we overrule *Concordia Teachers College*, and, even if it had, it would have to overcome the doctrine of legislative acquiescence. But even if the Legislature has, up to this point, acquiesced in our interpretation of the APA in *Concordia Teachers College*, the outcome in this case may provide reason for the Legislature to consider anew whether the APA should be amended to allow courts to exercise subject matter jurisdiction when parties are not served with a summons but nonetheless make a timely general appearance in a judicial review proceeding.